UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIRK DWAYNE COUNTRYMAN,

        Petitioner,

                                    Case Number 17-11047
v.                                         Honorable David M. Lawson

DEWAYNE BURTON,

        Respondent.
_____/

**<u>OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS</u>**

On June 26, 2011, a gunman fired several gunshots at a vehicle occupied by three

individuals who were riding on Avery Street in Detroit, Michigan. One of the three occupants of

the vehicle was shot in the head and severely injured. The other two occupants were unharmed,

and they identified petitioner Kirk Dwayne Countryman as the shooter in a pretrial photo display

and at trial. Countryman ultimately was convicted of three counts of assault with intent to commit

murder, Mich. Comp. Laws § 750.83, one count of felon in possession of a firearm, Mich. Comp.

Laws § 750.224f, and one count of possessing a firearm during the commission of a felony ("felony

firearm"), Mich. Comp. Laws § 750.227b, following a bench trial that was held on six days over

six months. The trial court sentenced Countryman as a habitual offender to 30 to 45 years in prison

for the assault convictions and lesser terms for the other convictions. In a petition for the writ of

habeas corpus under 28 U.S.C. § 2254, Countryman now raises several claims relating to the

conduct of the prosecutor and his own counsel. The warden argues that Countryman's claims are

not cognizable on habeas review, are procedurally defaulted, or were reasonably decided by the

state court.  Because none of Countryman's claims supports the issuance of a writ of habeas corpus by a federal court, the petition will be denied.

I.

Countryman was charged with three counts of assault with intent to commit murder, three counts of assault with intent to do great bodily harm less than murder, one count of felon in possession of a firearm, and one count of felony firearm.  He waived his right to a jury and was tried before a judge in Wayne County, Michigan circuit court.   The trial court took testimony on March 16, 2012, April 27, 2012, May 7, 2012, June 8, 2012, and July 16, 2012 and issued its findings of fact and conclusions of law on August 16, 2012.  The state appellate court provided the following accurate summary of the evidence established at Countryman's trial:

> Witness Kawan Taylor testified that [on June 26, 2011] he observed a man known to him as "Black Kirk" with a gun.[1]  Later that evening, he was a rear passenger in a vehicle driven by his sister, Lotoya Winston, when he saw defendant point the gun at the vehicle and start shooting.  Winston sped away, but her front passenger, Arlin Johnson, was bleeding profusely from the head.  As she drove away, she looked in her rear view mirror and saw defendant chasing after the vehicle while shooting.  She drove to the hospital where security personnel helped Johnson inside.  Johnson had brought a bookbag or backpack into the front seat of the vehicle that he later passed to Taylor.  At the hospital, Taylor placed the backpack in the trunk; it contained two guns.

> At trial, defendant testified in his own defense and denied any involvement in the shooting.  Rather, [he testified that] he mowed lawns from early in the afternoon until 7:00 p.m., and then dressed for a party.  He offered his sisters, Odessa Montgomery and India Countryman, who were present at the home, as alibi witnesses.  However, Kevin Price, the father of Montgomery's child, gave a statement to police indicating that "Black Kirk" committed the shooting.  At trial, Price's denial that defendant was involved in the shooting was impeached by his prior conflicting statement. Additionally, jail conversations were admitted into evidence and submitted to the trial court.  Therein, defendant expressed displeasure with Price and Johnson and apparently attempted to dissuade them from testifying.  Johnson could not be located for trial and did not testify.  Additionally, defendant waived the testimony of medical and ballistics experts.

―――――――――――――――――――――――

[1]Taylor and Lotoya Winston identified defendant by photograph as the man known as "Black Kirk," and identified defendant as the shooter at trial.

*People v. Countryman*, No. 312647, 2014 WL 308847, at *1 (Mich. Ct. App. Jan. 28, 2014).

On August 16, 2012, the trial court found Countryman guilty of the three counts of assault with intent to commit murder and the two firearm charges. The court acquitted Countryman of the three alternative counts of assault with intent to do great bodily harm less than murder. On September 11, 2012, the trial court sentenced Countryman to two years in prison for the felony-firearm conviction, followed by concurrent terms of 30 to 45 years for each assault conviction and forty-seven months to seven and a half years for the felon-in-possession conviction.

On direct appeal, Countryman argued that the prosecution presented perjured testimony at trial and that his trial attorney was ineffective. The Michigan Court of Appeals disagreed and affirmed Countryman's convictions in an unpublished, *per curiam* opinion, *see id.*, and the Michigan Supreme Court denied leave to appeal, *People v. Countryman*, 496 Mich. 865, 849 N.W.2d 338 (2014) (table).

Countryman subsequently filed a post-conviction motion in which he raised the claims presented in his federal habeas corpus petition. The state trial court denied the motion on the merits and because Countryman could have raised them on direct appeal. *See* Mich. Ct. R. 6.508(D)(3); *People v. Countryman*, No. 11-008898-FC (Wayne Cty. Cir. Ct. Dec. 1, 2015) (ECF No. 6-14, PageID 892-903). The Michigan Court of Appeals denied leave to appeal, and, once again, the Michigan Supreme Court followed suit. *People v. Countryman*, 501 Mich. 859, 900 N.W.2d 639 (2017) (table).

Without waiting for the state supreme court's last decision, Countryman filed his habeas corpus petition through counsel on April 4, 2017. The petition lists these grounds for relief:

I. Newly presented evidence from the shooting victim compels a finding that Countryman is actually innocent.

II. The prosecution breached its obligation to notify Countryman of all known *res gestae* witnesses and suppressed the existence of witnesses and exculpatory or impeachment evidence that would have changed the outcome of the trial.

III. The prosecution allowed witness Kawan Taylor to commit perjury without correcting the false testimony.

IV. Trial counsel deprived Countryman of his right to effective assistance of counsel when counsel failed to
   a. move to strike the prosecutor's untimely notice of rebuttal,
   b. move to exclude jailhouse recordings,
   c. move for a continuance to investigate, locate, and interview all eyewitnesses whose identities were suppressed by the prosecution, and
   d. provide the trial court with evidence that Taylor
      i. confessed to participating in the shooting,
      ii. stated that the guns found in his sister's car were "our" weapons, and
      iii. admitted to being known as "K.D."

V. Appellate counsel was ineffective for failing to raise all his claims on direct appeal.

The warden responded that Countryman's first, third, and fourth claims are not cognizable on habeas review or are procedurally defaulted, and that the state court's adjudication of Countryman's second and fifth claims was objectively reasonable. Countryman then filed a reply brief in which he maintains that his first and fifth claims are procedural claims and because none of his claims are procedurally defaulted, it is unnecessary for the Court to address those claims.

The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly some of his claims in state court, and the state court's ruling on that basis is an adequate and independent ground for the denial of relief. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Court finds it unnecessary to address this procedural question. It is not a

jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Therefore, the Court will proceed to address Countryman's second, third, and fourth claims, using the following standard of review. This procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

## II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented

in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)). The AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

Even though the state appellate courts did not give full consideration to some of Countryman's federal claims on appeal, AEDPA's highly deferential standard for reviewing a habeas petitioner's constitutional claims applies here. The petitioner must show that "the state court decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law' or involved an 'unreasonable determination of the facts.'" *Kelly v. Lazaroff*, 846 F.3d 819, 831 (6th Cir. 2017) (quoting 28 U.S.C. § 2254(d)). That standard applies "even when a state court does not explain the reasoning behind its denial of relief." *Carter v. Mitchell*, 829 F.3d 455, 468 (6th Cir. 2016). "Under [*Harrington v. Richter*, 562 U.S. 86 (2011)], '[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on its merits in the absence of any indication or state-law procedural principles to the contrary.'" *Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d 450,

460 (6th Cir. 2015) (quoting *Harrington*, 562 U.S. at 99).  There is nothing in this record that suggests a basis for rebutting that presumption.  *See Johnson v. Williams*, 568 U.S. 289, 303 (2013).

## A.

Countryman alleges that the prosecution breached its statutory obligation to notify him of all known *res gestae* witnesses and suppressed the witnesses' identifies.  The witnesses in question are Seona Goodwin, Jamison King, Brian Green, Nathan Price, Barbara Roman, Wesley Odum, T.J. Jackson, Aaron Thomas, Jamal King, Desmond Price, and Diane or Diana Stokes.  *See* Pet. for Writ of Habeas Corpus, ECF No. 1, PageID 9-12.  The habeas petition also mentions Nathan Stokes as an undisclosed witness, *id*., PageID 10, but in his reply brief, Countryman contends that Nathan Price is actually Nathan Stokes.  *See* Petitioner's Reply, ECF No. 16, PageID 1132 n. 10. In addition, Countryman's reply brief and exhibits indicate that Jamal King is also known as Jasmine or Jasmire King.  *See id*., PageID 1165, 1186, 1242-43.

Countryman claims that none of the prosecution's witness lists contained the names of these witnesses.  Additionally, he asserts that suppressing Desmond Price and Diane/Diana Stokes' identities severely prejudiced him because those two witnesses informed the police that they saw shots being fired from the victims' vehicle and that Kevin Price or Kawan Taylor pointed a gun or fired shots from inside the vehicle.  *See* Pet. for Writ of Habeas Corpus, ECF No. 1, PageID 12; *id*., Appendix E (Officer Joe Williams' crime report), PageID 50; *id*., Appendix F (Lieutenant Eric Decker's crime report), PageID 54.  Additionally, Desmond Price informed Lieutenant Decker that he saw someone named "Ron-Dee" with a gun on Avery Street.  *Id*.  The state trial court reviewed Countryman's claim during post-conviction proceedings and concluded that the

prosecutor's failure to notify Countryman about the individuals was not tantamount to prosecutorial misconduct.

A state statute, Michigan Compiled Laws section 767.40a, requires the prosecutor to attach to a criminal information a list of all witnesses intended to testify at trial and all "res gestae" witness; and the prosecutor has a continuing duty to update that list when new witnesses are discovered. Mich. Comp. Laws § 767.40a(1), (2). Countryman's argument that the prosecutor violated a provision of state law does not help him here. Federal courts do not enforce state laws in a habeas corpus proceeding. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Instead, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

However, the suppression of evidence that might be favorable to a defendant, however, can violate the Due Process Clause of the Fourteenth Amendment. *Wearry v. Cain*, --- U.S. ---, 136 S. Ct. 1002, 1006 (2016) (per curiam) ("the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution") (quoting *Brady v. Maryland,* 373 U.S. 83, 87 (1963)). To succeed on this claim, Countryman must show three things: "[1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

"[E]vidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler*, 527

U.S. at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985)). The defendant need not establish the likelihood of an acquittal. *Wearry*, 136 S. Ct. at 1006. "He must show only that the new evidence is sufficient to 'undermine confidence' in the verdict." *Ibid.*

Countryman comes up short on the suppression element. He relies on police reports to show that the identities of witnesses were suppressed, but his trial attorney had at least one of those reports. *See* ECF No. 6-5, PageID 417, 419 (defense counsel's use of Lieutenant Patrick Jackman's crime report during the cross-examination of Jackman). Therefore, it was not unreasonable for the state trial court to conclude on post-appeal review that defense counsel had a copy of all the police reports before trial.

Even if the prosecution did not provide all the police reports to Countryman's trial counsel, *Brady* generally applies only to a complete failure to disclose, not to a tardy disclosure of exculpatory information. *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986). "If previously undisclosed evidence is disclosed . . . during trial, no *Brady* violation occurs unless the defendant has been prejudiced by the delay in disclosure." *Ibid.*

The following chart illustrates that most of the witnesses which the prosecution supposedly failed to disclose were mentioned at trial.

| "Suppressed" Witness | When Mentioned | By Whom |
|---|---|---|
| Jamison King | 3/16/12 Trial Tr., ECF No. 6-3, PageID 251, 289 | Kawan Taylor |
| | 3/16/12 Trial Tr., ECF No. 6-3, PageID 316-17, 319 | Lotoya Winston |
| Brian Green | 3/16/12 Trial Tr., ECF No. 6-3, PageID 251, 254 | KawanTaylor |
| | 4/27/12 Trial Tr., ECF No. 6-4, PageID 332-33 | Lotoya Winston |
| Nathan Price/Stokes | 3/16/12 Trial Tr., ECF No. 6-3, PageID 315 | Lotoya Winston |
| | 4/27/12 Trial Tr., ECF No. 6-4, PageID 333 | Lotoya Winston |
| | 5/7/12 Trial Tr., ECF No. 6-5, PageID 446 | Kirk Countryman |
| | 7/16/12 Trial Tr., ECF No. 6-7, PageID 578, 581, 591 | Kevin Price |
| Wesley Odum | 7/16/12 Trial  Tr., ECF No. 6-7, PageID 579, 581, 588 | Kevin Price |
| T.J. Jackson | 3/16/12 Trial Tr., ECF No. 6-3, PageID 315 | Lotoya Winston |
| Aaron Thomas | 3/16/12 Trial Tr., ECF No. 6-3, PageID 315 | Lotoya Winston |
| Jamal/Jasmire King | 4/27/12 Trial Tr., ECF No. 6-4, PageID 332-33, 351-52, 359 | Lotoya Winston |
| | 7/16/12 Trial Tr., ECF No. 6-7, PageID 579, 581, 587 | Kevin Price |
| Desmond Price | 3/16/12 Trial Tr., ECF No. 6-3, PageID 315 | Lotoya Winston |
| | 4/27/12 Trial Tr., ECF No. 6-4, PageID 332-34, 350-52 | Lotoya Winston |
| | 4/27/12 Trial Tr., ECF No. 6-4, PageID 373 | Lt. Eric Decker |
| | 6/8/12 Trial Tr., ECF No. 6-6, PageID 483,493 | Kirk Countryman |
| | 7/16/12 Trial Tr., ECF No. 6-7, PageID 578, 581, 587 | Kevin Price |

All of these witnesses, except Wesley Odum, were mentioned on the first or second day of trial, that is, on March 16, 2012 or April 27, 2012.  The next trial date was May 7, 2012. Countryman began his testimony near the end of that day.  He finished his testimony and presented his defense witnesses a month later on June 8, 2012.  Because he had sufficient time to prepare his

defense or to request a continuance if he needed more time to prepare for trial, the prosecution's delay in disclosing Jamison King, Brian Green, Nathan Price/Stokes, T. J. Jackson, Aaron Thomas, Jamal/Jasmire King, and Desmond Price did not prejudice the defense. *See United States v. Hicks*, 495 F. App'x 633, 639 (6th Cir. 2012).

Moreover, Countryman testified that he knew the Price families, including Nathan Price/Stokes and Desmond Price, who were his friends. *See* Trial Tr., ECF No. 6-5, PageID 446 (regarding Nathan Price); Trial Tr. ECF No. 6-6, PageID 483, 493 (regarding Desmond Price). Because he should have known the essential facts permitting him to take advantage of any exculpatory information those witnesses had and because the information was available to him from a source other than the prosecution, there was no *Brady* violation. *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998).

Wesley Odum was not mentioned until July 16, 2012, when rebuttal witness Kevin Price testified, and none of the trial witnesses mentioned Seona Goodwin, Barbara Roman, or Diane Stokes. Nevertheless, Countryman has not alleged what Odum, Goodwin, or Roman would have said if they had testified, and therefore he fails the materiality and prejudice parts of the test.

Countryman alleges that Diane or Diana Stokes could have provided exculpatory evidence because she informed a police officer that Kawan Taylor and Kevin Price were shooting guns from the victims' car. However, it was Diane/Diana Price (witness one) who apparently provided this information to the police, *see id.,* Appendix E, ECF No. 1, PageID 50-51, and the prosecution listed her on its witness list, *see id*., Appendix B, ECF No.1, PageID 42; *id*. Appendix C, ECF No. 1, PageID 44; *id*., Appendix D, ECF No. 1, PageID 47.

Countryman has not established all three elements of a true *Brady* claim here. He certainly has not shown that the state court's rejection of the claim was unreasonable.

B.

Countryman alleges next that the prosecution allowed Kawan Taylor to perjure himself at trial and failed to correct the false testimony. According to Countryman, Taylor admitted in his statement to Lieutenant Eric Decker that he was known as "K.D," but at the preliminary examination and at trial, Taylor testified that he did not know K.D.'s real identity. Countryman posits that Taylor's police statement was true, and his testimony was false.

Countryman asserts that proving Taylor lied about being K.D. would have been fatal to the prosecution's case and resulted in a different outcome because Desmond Price informed the police that K.D. had pointed a gun from Lotoya Winston's car window. Countryman argues that, if the trial court had known Kawan Taylor was K.D., the court could have concluded that Taylor shot and wounded Arlin Johnson or that Countryman acted in lawful defense of himself and others.

Countryman raised this claim on direct appeal. The Michigan Court of Appeals reviewed the claim for plain error because Countryman did not preserve the claim for appellate review. That court concluded that Countryman had failed to show the prosecution knowingly presented perjured testimony from Taylor.

Countryman also raised his claim in his post-conviction motion. The trial court was unpersuaded by the argument and reached the same conclusion as the court of appeals.

Prosecutors "may not knowingly present false evidence." *United States v. Fields*, 763 F.3d 443, 462 (6th Cir. 2014) (citing *Miller v. Pate,* 386 U.S. 1 (1967)). The Supreme Court has made

clear that "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). But "[a] conviction obtained through the knowing use of perjured testimony must be set aside [only] if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.'" *Fields*, 763 F.3d at 462 (quoting *Giglio,* 405 U.S. at 154).

To prove that the prosecutor's failure to correct false testimony violated the Due Process Clause, a habeas petitioner must show that (1) the statement was actually and "indisputably" false; (2) the prosecution knew it was false; and (3) the statement was material. *Rosencrantz v. Lafler*, 568 F.3d 577, 583-84 (6th Cir. 2009); *see also Monea v. United States*, 914 F.3d 414, 421 (6th Cir. 2019); *Amos v. Renico*, 683 F.3d 720, 728 (6th Cir. 2012).

Even when all three elements are proven, the improper use of perjured testimony is subject to a harmless error analysis. *Monea*, 914 F.3d at 421. In a habeas case, that means that the error must have had "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson,* 507 U.S. 619, 637-38 (1993). Put another way, a federal court will grant habeas relief when it has at least "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'" *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (quoting *Brecht*, 507 U.S. at 627). "'[G]rave doubt' about whether the error was harmless means that 'the matter is so evenly balanced that [the court] feels [it]self in virtual

equipoise as to the harmlessness of the error.'" *O'Neal v. Balcarcel*, 933 F.3d 618, 624 (6th Cir. 2019) (quoting *O'Neal*, 513 U.S. at 435).

Lieutenant Decker's crime report appears to say that Kawan Taylor told him during an interview that he was also known as "K.D." *See* Pet. for Writ of Habeas Corpus, Appendix F, ECF No. 1, PageID 54. At trial, however, Taylor testified that he did not know "K.D." Trial Tr., ECF No. 6-3, PageID 290, 299, 302. That does not necessarily mean Taylor perjured himself at trial. A witness "may give inaccurate testimony due to confusion, mistake, or faulty memory," *United States v. Dunnigan*, 507 U.S. 87, 95 (1993), and "mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *United States v. Lochmondy,* 890 F.2d 817, 822 (6th Cir. 1989). Taylor explained at trial that he was taking a lot of medication due to sickle cell disease, a wound, and a bad heart. He also stated that he was a special-education student in school, that he had a bad memory, that he was illiterate, and that he did not know what Lieutenant Decker wrote in his report. *See id.*, PageID 299, 303-04.

All of that lends support to the state courts' determination that the prosecution did not present perjured testimony. Furthermore, defense counsel did bring out some inconsistencies in Taylor's trial testimony about K.D. And even though Countryman asserts that Taylor's inconsistent testimony shows he was not credible, Taylor's testimony was corroborated by Lotoya Winston.

One last point: even if Taylor testified falsely about K.D., that testimony was not material evidence because the defense theory was that Countryman was elsewhere during the shooting, not that he acted in defense of himself or others because K.D. or someone else in the victims' car fired at him or the crowd near him. And the alleged perjury was harmless because Lotoya Winston

testified similarly to Taylor, and the trial court did not find Countryman or the other defense witnesses to be credible. The state courts reasonably concluded that Taylor's allegedly false testimony concerning K.D. could not have had a substantial and injurious effect or influence on the trial court's verdict. Countryman is not entitled to relief on his claim.

C.

In his final claim, Countryman alleges that his trial attorney performed ineffectively when he failed to: (1) move to strike the prosecution's untimely notice of rebuttal to Countryman's alibi defense; (2) move to exclude evidence of jailhouse recordings; (3) move for a continuance to investigate, locate, and interview all eyewitnesses whose identities were suppressed by the prosecution; and (4) provide the trial court with evidence that Taylor (a) confessed to participating in the shooting when he testified at the preliminary examination and (b) stated at the preliminary examination that the guns found in his sister's car were "our" weapons. (In his reply brief, Countryman withdraws an additional subclaim that defense counsel was ineffective for failing to impeach Taylor with his pretrial statement to Lieutenant Decker that he was "K.D.") The state trial court rejected the petitioner's ineffective-assistance-of-counsel claims during the post-conviction proceedings.

An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of

counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Success on ineffective-assistance-of-counsel claims is relatively rare, because the *Strickland* standard is "'difficult to meet.'" *White v. Woodall*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013)). And under AEDPA, obtaining relief under *Strickland* is even more difficult because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

1.

Countryman asserts that his trial attorney should have moved to strike the prosecution's notice of rebuttal to Countryman's alibi defense because the rebuttal notice was tardy. Countryman contends that, as a result of counsel's failure to move to exclude the rebuttal evidence, damaging evidence, including Kevin Price's testimony and jailhouse recordings, was admitted in evidence.

State law requires that a rebuttal notice be filed no later than five days before the trial, *see* Mich. Comp. Laws §768.20(2), and it is undisputed that the prosecution's notice was untimely. But, as the state trial court pointed out on review of Countryman's claim, state courts may grant a prosecutor's request to file a late rebuttal notice. *See id*. (indicating that a rebuttal notice may be filed "at such other time as the court may direct"); *see also People v. Bell*, 169 Mich. App. 306, 309; 425 N.W.2d 537, 538 (1988) (interpreting state law as giving the trial judge discretion to allow the prosecution to file a late notice of rebuttal after the trial has commenced).

Because of the trial court's discretionary authority to approve a tardy rebuttal notice, trial counsel could have concluded that it would be futile to object to the rebuttal notice as untimely. And that conclusion would be reasonable, because it appears that the delay in filing a rebuttal notice was due to Countryman's alibi witnesses being unwilling to provide statements to police officers. *See* Trial Tr., ECF No. 6-3, PageID 239-41. "[T]he failure to make futile objections does not constitute ineffective assistance." *Altman v. Winn*, 644 F. App'x 637, 644 (6th Cir. 2016).

Furthermore, according to Countryman, the prosecutor filed his rebuttal notice before the second day of trial on April 25, 2012, and the rebuttal witness (Kevin Price) did not testify until July 16, 2012. The length of time (nearly two months) between the rebuttal notice and the rebuttal

witness's testimony should have given trial counsel sufficient time to prepare for the testimony. In fact, Kevin Price initially was on *defense counsel's* alibi witness list. As the trial court pointed out, if Price was on the defense witness list, there could not have been any surprise about his existence or what he knew.

Finally, to his credit, trial counsel did attempt to preclude the prosecution from presenting Kevin Price as a rebuttal witness because Price had violated the trial court's sequestration order. Even assuming that he should have raised the additional argument that the rebuttal notice was untimely, that omission did not prejudice Countryman. As noted above, defense counsel had ample time to prepare for Kevin Price's testimony. And the jailhouse recordings that Countryman contends would not have been admitted if defense counsel had moved to strike the rebuttal notice were actually admitted during the prosecution's case in chief, not during its rebuttal to Countryman's alibi defense. Trial counsel's performance was not constitutionally ineffective by not moving to strike the prosecution's rebuttal notice as untimely.

## 2.

Countryman contends that his trial attorney should have moved to exclude the recordings of his jailhouse phone calls because the prosecution did not provide a proper foundation for the evidence by authenticating the phone calls. He says that the recordings were prejudicial because he appeared to acknowledge during his phone calls that he was known as "Black Kirk." The phone calls also indicate that Countryman may have tried to influence certain witnesses' testimony.

The disputed recordings were introduced in evidence through Wayne County investigator Ki Sobol, who did not identify Countryman's voice in the recordings. However, he produced a document that showed the calls were made with the use of Countryman's inmate number. The

document showed the date and time of the calls, the length of the calls, and the method of payment for the calls. Although Countryman contends that another inmate could have used his inmate number and PIN (password), Investigator Sobol testified that inmates may only call people whose phone numbers are on their phone list. So, a stolen inmate number and PIN would be useless if the person who stole the information did not also have the name of the person being called on his phone list.

Furthermore, Countryman admitted to making jailhouse calls to friends, including Kevin Price, his girlfriend, Arlin Johnson, and relatives. He also admitted that he may have told Desmond Price's mother that she knew what to do, and Kevin Price testified that he talked to Countryman in a three-way call with Countryman's sister Odessa while Countryman was in jail. When the recording of the three-way call was played at trial, Price identified Countryman's voice.

The state trial court reasonably concluded that there was sufficient evidence to support the conclusion that the recordings were what the prosecutor claimed they were. Defense counsel's decision not to challenge the admissibility of that evidence did not amount to deficient performance.

3.

Next, Countryman asserts that his trial attorney should have moved for a continuance of the trial to investigate, locate, and interview all eyewitnesses whose identities were suppressed by the prosecution. According to Countryman, the witnesses would have provided exculpatory testimony that he was not involved in the shooting and that certain other persons (Kawan Taylor, Kevin Price, and someone known as "Ron-Dee") were the actual shooters.

The state trial court denied relief on this claim, in part, because trial counsel was not obligated to interview every possible witness suggested by Countryman. The trial court also opined that Countryman had failed to demonstrate how the proffered witnesses were helpful to his defense, would have affected the outcome of the trial, or would have corroborated his version of the events. According to the trial court, Countryman was not prejudiced by his trial attorney's omissions.

As pointed out above, the identities of many witnesses were made known to the defense during trial, and there were significant gaps in the trial that would have enabled defense counsel to investigate witnesses. The fact that trial counsel did not request a continuance suggests that he had sufficient time to prepare for trial and was not prejudiced by the alleged suppression of witnesses' names. As such, he was not ineffective by not moving for a continuance. *Cf. Hicks*, 495 F. App'x at 640 ("The failure to ask for a continuance suggests that the defense had sufficient time to prepare and thus was not prejudiced by the delayed disclosure [of jailhouse phone recordings.]").

## 4.

Countryman contends that his trial attorney was ineffective by miscellaneous inaction, such as failing to produce evidence that Kawan Taylor testified during the preliminary examination that he (Taylor) was involved in the shooting and that the guns found in his sister's car were "our" weapons. Countryman argues that this evidence and other evidence would have damaged Taylor's credibility because Taylor's earlier testimony suggested that Taylor himself was responsible for shooting Arlin Johnson. He relies on the following testimony from the preliminary examination for the contention that Taylor admitted to being involved in the shooting:

Q. [by the prosecutor]  Describe that.  Describe the whole shooting.

A. [by Kawan Taylor]  We was riding up Avery like this.  We was (sic) going passed (sic) like this.  As soon as we got passed all the crowd, that's when [Countryman] came out raised, boom, boom, boom, boom.  I was rolling a blunt and I looked back and when I look[ed] back again, we caught eye contact, *that's when we just start (sic) shooting*.  Pow, I go he hit me.  We went straight to Henry Ford.

Pet. for Writ of Habeas Corpus, ECF No. 1, PageID 29-30 (quoting 8/22/11 Prelim. Examination Tr., at 23-24) (emphasis added)

The state trial court was unpersuaded by this argument because there was no reasonable probability that defense counsel's failure to impeach Taylor on all contradictory aspects of his pretrial and trial testimony deprived Countryman of a substantial defense or would have changed the outcome of the trial.

Trial counsel did attempt to impeach Taylor with his preliminary examination testimony, but Taylor claimed that he did not remember much due to his medication.  Furthermore, Taylor's trial testimony — that Countryman was the shooter and that no one in the victims' car fired at Countryman or the crowd near Countryman — was corroborated by Lotoya Winston.  Taylor's trial testimony also was consistent with his pretrial identification of Countryman as the shooter when he was shown a photo array.

Even if defense counsel had pointed out Taylor's comment at the preliminary examination about "our weapons" and his testimony that "we just start[ed] shooting," his testimony, quoted above, suggests that Countryman shot first.  This testimony would have been detrimental to the defense.  There is no reasonable probability that the result of the trial would have been different had trial counsel done more to impeach Taylor with his preliminary examination testimony.

Trial counsel's performance was not deficient, and the allegedly deficient performance did not prejudice the defense. Therefore, the trial court's rejection of Countryman's claim was not contrary to or an unreasonable application of Supreme Court precedent. Countryman is not entitled to relief on his claim.

### III.

None of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d). The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

It is further **ORDERED** that the petitioner's motion for release on bond (ECF No. 21) is **DENIED as moot**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Date: March 6, 2020

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on March 6, 2020.

s/Susan K. Pinkowski<br>
SUSAN K. PINKOWSKI

---